## Western Union Telegraph Company v. W. D. Wofford.

### Decided May 13, 1903.

**1.—Transcript—Leave to File—Delay.**

Where the transcript on appeal is presented for filing ten months after the appeal was perfected, and no sufficient excuse for delay is shown, leave to file it will be refused.

**2.—Same—Affirmance on Certificate.**

Where the appellant abandoned his appeal, not having filed the transcript in time, and sued out a writ of error, the appellee was not entitled to have an affirmance on certificate filed after the term at which the transcript should have been filed. That the clerk, when applied to, failed to then furnish appellee with the certificate because he was busy, did not justify the latter in abandoning the effort to obtain it.

**3.—Writ of Error—Death of Party—Procedure—Heirs.**

Where, after the death of a party to a judgment, a writ of error is sued out by the opposite party, the defendants in such writ should be designated by name in the petition and bond, and not merely as the "heirs of" the deceased, and service should be had on them, and not on the attorney of record of the deceased. Leave granted to perfect the proceeding and record below so as to conform to this ruling, and to file a further transcript showing this to have been done.

**4.—Master and Servant—Principal and Agent—Notice—Telegraph Operator.**

The rule as to when a principal is charged with the knowledge of his agent has no application to cases involving the master's responsibility for the negligence of a servant, such as a telegraph operator.

**5.—Charge.**

It is not error to refuse to give a charge which has in substantial effect been already given.

**6.—Telegraph Company—Delay—Damages—Sheriff's Sale—Partners in Title.**

Where there was a failure to deliver a message to a sheriff to postpone an execution sale of plaintiff's land, causing a loss of the land, the telegraph com-

pany was not entitled to have plaintiff's recovery of damages restricted to the value of only one-half the land on the ground that at the time the message was sent the record title to the land stood in the name of plaintiff and another person, a former partner whose interest he had bought. The nature of the message being such as to disclose that plaintiff had some interest in the land, he was entitled to recover to the extent of his actual interest therein.

### 7.—Same—Duty to Lessen Damages—Charge.

Where the court had charged that it was plaintiff's duty to take such measures as were in his power to make the injuries as light as possible, and that if the jury found that it was in his power to lessen his damages by having the sale set aside, he could recover only what it would have cost to have the sale set aside, it was not error to refuse a charge requested by defendant stating this proposition in a form less favorable to itself because requiring a less degree of care on the part of plaintiff in the effort to have the sale set aside.

### 8.—Same—Delivering Message at Office of Addressee—Sheriff.

Where the addressee of a message was sheriff, though not addressed as such, and the telegraph agent at the point of delivery found that he was out of town, the message should have been tendered at the addressee's office, and if there was any one there to receive it, should have been delivered to such person. Following ruling in this case by the Supreme Court on former appeal. See 94 Texas, 345.

Appeal from the District Court of Gonzales. Tried below before Hon. M. Kennon.

*Norman G. Kittrell* and *M. S. Hallam,* for appellant.

*Thos. McNeal* and *Denman, Franklin & McGown,* for appellee.

#### ON MOTION TO FILE RECORD AND AFFIRM ON CERTIFICATE.

JAMES, Chief Justice.—An appeal in this case was perfected on March 5, 1902. The transcript for appeal was not presented to the clerk of this court for filing until January 9, 1903. The motion for leave to file it as an appeal will be refused, because the evidence submitted to us in connection with the motion shows no sufficient excuse for the delay.

Appellant in a later motion filed January 24, 1903, alleges that its counsel being advised that its original motion would be resisted, did on January 17, 1903, file its petition for writ of error with supersedeas bond, and caused citation to be issued thereon, which was on January 18th returned with indorsement that Wofford had died before the petition and bond were filed, of which fact appellant and its counsel had no knowledge prior to such return. On January 22, 1903, it filed its further petition for writ of error with supersedeas bond against the heirs of Wofford as parties. In the new or supplemental motion filed here January 24, 1903, appellant alleges that it did not know that Wofford left heirs, nor who, if any person, is his administrator, nor if he left heirs, who they are or where they reside, and have not yet had time nor been able to ascertain the facts in this connection.

The record on appeal presented here for filing on January 9, 1903,

was not filed by the clerk, and as it now appears there have been added to it the petition for writ of error and the bond against the "heirs of Wofford," with a citation thereon served on Wofford's attorney of record, and the motion now before us is a motion to allow the Western Union Telegraph Company to be heard either upon said appeal or writ of error as it may be entitled.

As already explained, the motion to allow the case to be heard on appeal is overruled.

On January 30, 1903, appellee filed a motion to affirm on certificate. It will be observed that the term at which the appeal was returnable expired about July 1, 1902, and appellee had ample time to file the motion during that term, but did not do so. In a reply filed January 19, 1903, by appellee's counsel resisting the motion to file the transcript on appeal, counsel make known the fact that early in June, a short time after the expiration of the ninety days after perfecting the appeal and before the end of that term of this court, he demanded from the clerk a certificate with which to make a motion to affirm; that the latter replied that, on account of being busy, he could not then furnish it, and counsel, not being able to procure it, abandoned the same.

So far as we have been able to find, affirmance on certificate has occurred in cases only when the certificate was filed at the term to which the record was returnable. Here we have one which was filed after the term, and appellee's counsel declares that he undertook to obtain a certificate for the purpose during that term, and saw fit to abandon it. The rule on the subject appears to be that an appeal may be abandoned and a writ of error sued out, but the right to the latter, under such circumstances, is subject to the absolute right to have the judgment affirmed on certificate at the term at which the transcript should have been filed. Insurance Co. v. Clancey, 91 Texas, 471.

The first writ of error proceeding was against a dead person, and that effort can hardly be considered the suing out of a writ of error. The new petition and bond against the heirs, filed five days later upon discovering that Wofford had died, was really a part of one and the same effort to obtain a writ of error, rather than the abandonment of one writ and the suing out of another. For the above reasons we overrule the motion to affirm on certificate.

The defendant in the judgment has the right to prosecute a writ of error. The record, however, is prematurely brought here,—the defendants not being designated by name in the petition and bond, but generally as the "heirs of Wofford," and no service had. Service on Wofford's attorney of record, Wofford being dead, we think is not authorized. But plaintiff in error may perfect the writ and get citation on the proper parties. It is not our function to direct the details of such proceedings, which must be had in the district court, and brought here by transcript in due time.

Under the authority of Hohenthal v. Turnure, 50 Texas, 3, the record will be allowed to be filed in this court as a proceeding by writ of error,

but no further action will be taken thereon until the writ is perfected in the district court, and a further transcript filed here showing that it has been perfected. Due diligence will be required of plaintiff in error in such proceeding, to be passed on hereafter, if necessary.

*Ordered accordingly.*

Delivered February 18, 1903.

### ON THE MERITS.

This is the third appeal in this cause. See 42 S. W. Rep., 119; 58 S. W. Rep., 627; 94 Texas, 345. These reports showing the nature of the case, which remains practically the same, renders it unnecessary to restate same. The judgment is one in favor of plaintiff.

The second and third assignments invoke this proposition: "In order to charge the principal with knowledge possessed by an agent, it must be alleged and proved that such knowledge was acquired by the agent in the course of his employment, or in connection with the performance of his duties as such agent, in the particular transaction." The state of evidence upon which the rule is sought to be applied here, is that it was shown that the agents at Gonzales and Hallettsville knew that Houchins, the addressee, was the sheriff of Gonzales County, of which Hallettsville is the county seat, but when and how such knowledge was acquired was not shown.

The charge submitted the case on the issue of negligence of defendant in respect to the delivery of the message to Hallettsville. The relation of the telegraph agents (so called) to appellant is really that of employer and employe, or master and servant, and not that of principal and agent. In our opinion the rule has no application to cases involving the master's responsibility for the negligence of his servant.

The fourth assignment is not sustained. It complains of a charge refused which would have instructed the jury that Harwood & Harwood were plaintiff's agents in sending this telegram, and that if the address was misleading or incomplete, as by being addressed to J. F. Houchins, instead of J. F. Houchins, sheriff, and Harwood & Harwood thereby did what a reasonably prudent person would not have done under the circumstances, and that this contributed to the delay by reason of which the sale was not stopped, then to find for defendant on its plea of contributory negligence. The court, however, at defendant's request gave the following: "If you believe that the addressing of the message to J. F. Houchins without designating in any way that it was intended for Houchins as sheriff, was, under all the circumstances, negligence as that term has been heretofore defined in this charge, and that such negligence contributed to delay in delivery, and that by reason of such delay the sale was not stopped, you will find for defendant." We can not see how the charge would have received any additional strength by a further statement that Harwood & Harwood, who sent the message, were

plaintiff's agent in so doing, and that their negligence, if any, in addressing it was the negligence of plaintiff.

The fifth and sixth assignments seek to apply the rule, that defendant is liable only for such damages as could be reasonably foreseen or anticipated as the natural and probable result of its conduct, to the state of case which is indicated in the following refused charge:

"You are instructed that the evidence shows that when the sale was made the title to the property was in Wofford and Wemken, and the title to only one-half thereof was in Wofford, the plaintiff; therefore you are instructed that if you find for plaintiff, you will find damages only to the extent of one-half the fair market value of the property on March 7, 1893, with interest on said sum at 6 per cent from that date." The assignment is that it was error to refuse this charge, "because there was no evidence by deed that plaintiff ever owned more than one-half interest in the property sold."

It was shown that the partnership of Wofford and Wemken was dissolved on January 1, 1892, by a written agreement of dissolution, by which Wemken sold him the property and agreed in writing to make him a deed. The deed had not been made at the time of the sending of the message in question, but was afterward. The evidence shows that Wofford was really the owner of the whole property after the dissolution of said firm. The records, however, showed title as in Wofford and Wemken at the time of the occurrence here in question. Appellant insists that as it could not, under these circumstances, possibly have foreseen as the result of the delay in delivering the telegram, that Wofford would suffer except as to one-half of the land, it therefore can not be held any further.

We think there is nothing in the point. Such damages for breach of contract are allowed as are naturally the result of the breach. The failure to deliver the telegram in time would naturally and proximately result in a sale of the property, and this would naturally involve loss to the owner. It can not be, and we think is not, claimed that such injury would be too remote to authorize recovery in reference to the entire property. But it seems to be the contention that the judgment, order of sale and advertisement upon which the sale was made being against Wofford & Wemken, and not against Wofford alone, and the condition of the title as recorded showing title in Wofford & Wemken, defendant could not have reasonably foreseen or anticipated that its negligence would result in greater loss to plaintiff than half of the land. On appellant's own theory, that of a tenancy in common, it had no reason to assume that plaintiff owned only a half interest in the property, as his interest could consistently with cotenancy have been greater, and this would be ground enough for refusing the charge as framed.

We think, however, in the absence of a contract made upon the basis of, or with reference to, a title in Wofford less than the whole, defendant would clearly be liable to him on account of the sale to the extent that he was the owner of the property at the time. Defendant under the

circumstances had no right to speculate on, or consider, the extent of plaintiff's interest in the property. It knew from the nature of the message that the sender had some interest in the land to protect against the sale, and if through its negligence the sale took place, it was liable to him to the extent of his interest, whatever that was.

The sixth and eighth assignments complain of the refusal of the following charges: "If you find that plaintiff was able financially to employ counsel and pay court cost to have the sale of lots set aside, or by the use of ordinary care and diligence the plaintiff could have so employed counsel and arranged court cost to have sale set aside, and if you further find that plaintiff failed to make any reasonable effort to have such sale set aside, and if you further find that such failure of the plaintiff to have said sale set aside was negligence as negligence has been heretofore defined in the court's charge, and that said negligence, if any, on the part of the plaintiff in failing to make a reasonable effort to have said sale set aside, contributed to the amount of the damage herein, if any, then you are charged that plaintiff is not entitled to recover for any damages produced by his own contributory negligence in failing to have said sale set aside or to make the effort such as a reasonably prudent man would make under similar circumstances, then such damages, if any, produced by such failure, is not chargeable to the defendant."

"If the jury should believe from the evidence that the plaintiff could by the use of ordinary care have employed counsel to have the sale set aside, then you can only find for the plaintiff, if at all, for the amounts that would have been necessary to expend in order to have said sale set aside, together with six per cent interest per annum from the 7th of March, 1893."

It is unnecessary to discuss the right of defendant to the benefit of such a charge, or the extent of the right, because the court recognized such a right, and defendant received the benefit of it in the following instruction: "If you find from the evidence that the lots were sold in consequence of the negligent failure of the defendant to deliver the telegram in question, under the charge hereinbefore given you, still it was the duty of the plaintiff to take such measures as were in his power to render the injury to him as light as possible. Hence, if you find from the evidence that it was in the power of plaintiff to lessen his damage by having the sale set aside (which he had the legal right to do) and that the market value of the lots at the time of the sale was greater than the amount they brought at the sale, then the measure of plaintiff's damage would be the reasonable amount it would have cost to have such sale set aside, provided you should find such course would have decreased the damage to plaintiff."

The difference between the charges asked and the one given is that, although one of the former is more circumstantial, they both hold plaintiff only to ordinary care and diligence in the matter of setting the sale aside and thereby lessening his damages, while the charge given by the

court told the jury that it was plaintiff's duty to do everything in his power in that respect, the charge given on the subject being manifestly the more favorable to defendant.

The proposition under the tenth assignment is the same in substance as that disposed of under the second and third assignments.

The twelfth assignment presents the following proposition: "The telegram having been addressed to Houchins, not in his official capacity as sheriff, but to him personally, there devolved no duty upon the telegraph company to deliver the message to the deputy sheriff, and hence it could not be required to take notice of the deputy sheriff's authority to receive and open messages thus addressed to Houchins personally."

This question is practically decided in the opinion of the Supreme Court in this case. The evidence in that record showed, as it does here, that the agent at Hallettsville knew that Houchins was sheriff of that county, and in view of this the opinion states: "When the telegraph company found that Houchins was not in Hallettsville, it ought to have tendered the message at his office, and if there was anyone there to receive it, the message should have been delivered to that person." The testimony now is that the deputy was in the sheriff's office from 11 a. m., and until 2 o'clock p. m., when he made the sale, and that he had authority to receive messages addressed to Houchins individually or as sheriff, and would have done so.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.